IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

JAMES THOMAS MURPHY,

               Plaintiff,

Vs.                        No.  07-3074-SAC

PHILLIP D. HYLTON, et al.,

               Defendants.

**MEMORANDUM AND ORDER**

Pursuant to its statutory obligation to screen the plaintiff's complaint and dismiss any portion that fails to state a claim on which relief may be granted, this court filed a memorandum and order on April 23, 2007, (Dk. 16), laying out the following grounds on which the plaintiff's complaint was subject to dismissal:  1) failure to show the exhaustion of administrative remedies;[1] 2) failure to allege a valid basis for jurisdiction; 3) failure to state a constitutional claim of denial of medical care; 4) failure to state a viable claim for money damages; and 5) failure to allege a sufficient

---

[1]At the time of that order, this court was still treating exhaustion as a pleading requirement, but the Supreme Court in *Jones v. Bock*, ---U.S.---, 127 S. Ct. 910 (2007), recently held that exhaustion is an affirmative defense to be pled and proved first by the defendant.  Thus, this court will not now consider exhaustion as a viable ground for dismissal here since it was raised as part of the screening process under 28 U.S.C. §  1915A.

personal participation by those defendants other than Dr. Hylton.  (Dk. 16).

The court gave the plaintiff thirty days to submit the partial filing fee and to

show cause why the plaintiff's action should not be dismissed for these

stated reasons.  *Id.*  In that order, the court also permitted the plaintiff to

amend his complaint to name the correct Chief Executive Officer of North

Kansas City Hospital as defendant by dropping Patrick Higgins and adding

David Carpenter.  *Id.*  The plaintiff's amended complaint was filed on April

23, 2007.  (Dk. 17).

      Prior to the court's order to show cause and prior to the

amended complaint, several of the named defendants had filed motions to

dismiss the plaintiff's original complaint.  (Dks. 10, 12, 14, and 15).  On

April 24, 2007, the plaintiff filed a motion to extend by thirty days his time

for responding to the defendants' motions.  (Dk. 18).  After the plaintiff then

filed his amended complaint as stated above, the defendants filed another

set of motions to dismiss.  (Dks. 18, 21, 23, and 25).

      The court granted the plaintiff's motion for extension of time to

file responses.  (Dk. 27).  The court noted that the plaintiff was seeking

additional time only to respond to the defendants' motions and that the

defendant was not seeking and was not being granted more time to

2

respond to the court's show cause order.  (Dk. 27).  The court also observed "that if plaintiff fails to comply with its Memorandum and Order of April 23, 2007, this action may be dismissed without regard to the motions to dismiss.  Defendants' motions to dismiss and plaintiff's extension of time would then be rendered moot."  (Dk. 27, p. 2).

On May 29, 2007, after the thirty-day period to show cause had expired, the plaintiff filed a request for leave to amend complaint in which he asserts that "all deficiencies" noted by the court have been cured.  (Dk. 28).  Defendants have filed responses opposing the plaintiff's request to file an amended complaint.  (Dk. 29, 33, and 34).  The defendants contend that the plaintiff did not respond within the thirty-day deadline set by the court, did not timely pay the partial filing fee, and did not cure in his proposed amended complaint the deficiencies with his suit as were identified and discussed in the court's prior order.  The court has read and considered these responses in deciding the issues raised in the show cause order that are still outstanding.

Timeliness of the Plaintiff's Response and Payment

The record shows the plaintiff's request for leave to amend his complaint and his payment of the partial filing fee were docketed on May

29, 2007, after the thirty-day deadline expired on May 23, 2007.  At the

bottom of his typewritten request for leave, the plaintiff added a handwritten

certificate of service, which states:  "I hereby certify that on May 23, 2007, I

mailed the foregoing documents by 1st class mail to the attorneys of the

defendants and the clerk of the court."  (Dk. 28, p. 2).  The envelope

containing these pleadings shows the postage was paid on May 25, 2007,

and canceled the same day.

      Pursuant to Rule 5(d) of the Federal Rules of Civil Procedure,

"[t]he filing of papers with the court as required by these rules shall be

made by filing them with the clerk of court."  The plaintiff did not file his

request with the clerk of court until after the deadline of May 23, 2007.

Even giving the plaintiff the benefit of the three-day mailing period in Fed.

R. Civ. P. 6(e),[2] the plaintiff's request still was not filed by the end of the

day on May 28, 2007, as it was not received by the clerk of the court until

May 29, 2007.

      From his purported[3] certificate of service, the plaintiff appears

---

[2]"Whenever a party must or may act within a prescribed period after
service and service is made under Rule 5(b)(2)(B), (C), or (D), 3 days are
added under the prescribed period would otherwise expire under
subdivision (a)."  Fed. R. Civ. P. 6(e).

[3]The plaintiff did not sign the certificate of service.

4

to believe it was enough for him to assert that he placed his filing in the mail on May 23rd.  The plaintiff presumably is relying on some unstated version of the mailbox rule which recognizes that a prisoner's papers are deemed filed when given to a prison official rather than when actually filed with the court.  *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Hall v. Scott*, 292 F.3d 1264, 1266 n. 1 (10th Cir. 2002).  To take advantage of the "mailbox rule" a prisoner must document his use of the legal mail system or sign a notarized affidavit stating the date he deposited the mail in the regular mail system.  *Price v. Philpot*, 420 F.3d 1158, 1166-67 (10th Cir. 2005).  The plaintiff did not submit a notarized affidavit[4] that he deposited his request with prison officials to be mailed.  The prison mailbox rule does not apply to the regular prison mail system.  *See United States v. Leonard*, 937 F.2d 494, 495 (10th Cir. 1991).  Since the plaintiff is unable to claim the benefit of the prison mailbox rule, the court will dismiss the plaintiff's response as untimely.  The court will address the other grounds simply as additional reasons for dismissing this action.

Failure to Allege a Valid Basis for Jurisdiction

        In its prior order, the court observed that the plaintiff was

_____

        [4]The defendant submits no signed statement as being true under penalty of perjury.

asserting jurisdiction under 28 U.S.C. § 1331 (federal question) and

*Bivens*[5].  The plaintiff's original complaint failed to allege that individual

federal officers had violated any of the plaintiff's constitutional rights.

Because the complaint had not asserted any federal or state action on the

part of any named defendant, the court found no valid basis for jurisdiction

appearing on the face of the complaint under *Bivens* or § 1331.

         The plaintiff in seeking leave to file a second-amended

complaint proposes to assert jurisdiction under 42 U.S.C. §§ 1981 and

1983 and 28 U.S.C. §  1332, while leaving out any reference to *Bivens* and

28 U.S.C. § 1331.   The plaintiff's citation of 42 U.S.C. §§ 1981 and 1983

does not materially change the analysis and points made in the court's

original show cause order.[6]   The plaintiff's complaint still fails to allege

facts sufficient to sustain jurisdiction under § 1331 and further fails to allege

how these statutes are necessarily related to the claims of wrongful

conduct.  The plaintiff's addition of § 1332 also suffers from pleading

_____

[5]*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[6]Because §§ 1981 and 1983 are federal laws, the district court's jurisdiction would come under 28 U.S.C. § 1331 , which states "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

deficiencies and does not accompany any pleaded state-law claim for relief.

As to an action under 42 U.S.C. § 1981, the plaintiff's complaint continues to allege that the defendant Hylton discriminated against him because he was a prisoner or an inmate, but the plaintiff's complaint now adds that he is an "African American inmate" and that this "probably compounded the situation." (Dk. 28, p. 8). To state a § 1981 claim, the plaintiff must allege the defendant acted with the intent to discriminate on the basis of race. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001), *cert. denied*, 534 U.S. 1131 (2002). As amended in 1991, § 1981 is limited to actions taken "under color of State law." 42 U.S.C. § 1981(c); *see Davis-Warren Auctioneers v. FDIC*, 215 F.3d 1159, 1161 (10th Cir. 2000). Thus, it is inapplicable to alleged discrimination occurring under color of federal law. *Id.*; *Kimboko v. United States*, 26 Fed. Appx. 817, 819 (10th Cir. 2001); *see also*, *Gonzalez v. U.S. Air Force*, 88 Fed. Appx. 371, 378 (10th Cir. 2004). The plaintiff's complaint alleges that all the defendants, except for the City of North Kansas City, are not state actors or federal employees, and is otherwise silent in alleging that the defendants acted "under color of state law," within

7

the meaning of 42 U.S.C. §§ 1981 or 1983. *See West v. Atkins*. 487 U.S. 42, 43 (1988). There is no allegation that any of the defendants are under contract with the State of Kansas or the United States government and delegated with the responsibility and/or function to provide the necessary medical treatment for inmates at Fort Leavenworth so as to be clothed with the authority of state law or to be fairly ascribed as a state actor. The complaint fails to allege anything more than an ordinary physician-patient relationship. Having failed to allege that the defendant doctor and other medical staff and administration to be state actors, the plaintiff's §§ 1981 and 1983 claims are properly dismissed. *See, e.g.*, *Acosta v. U.S. Marshals Service*, 445 F.3d 509, 514 (1st Cir. 2006); *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997).

For purposes of diversity jurisdiction under 28 U.S.C. § 1332, the latest jurisdictional basis proposed by the plaintiff, the general rule is an inmate "is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state." *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006) (citations omitted). The plaintiff does not allege his citizenship prior to his incarceration at the disciplinary barracks at Fort Leavenworth, Kansas.

8

Having failed to allege his citizenship before incarceration, the plaintiff has

not alleged the necessary facts for diversity jurisdiction.[7]

Failure to State a Constitutional Claim of Denial of Medical Care

Under the federal-law claims for relief being asserted here,

personal liability exists only for plausibly alleged constitutional violations.

*See Daniels v. Williams*, 474 U.S. 327, 330-33 (1986).  The Eighth

Amendment imposes on the government the affirmative duty to provide

adequate medical care to incarcerated persons, and an inmate claiming a

constitutional violation must establish "deliberate indifference to serious

medical needs."  *See Estelle v. Gamble*, 429 U.S. 97, 103, 106  (1976).

The standard of deliberate indifference has two components: "'an objective

---

[7]The plaintiff's proposed complaint alleges only constitutional violations as claims for relief.  (Dk. 28, pp. 18-19).  While he generally asserts diversity jurisdiction, the plaintiff does not allege any claim for relief under state law, and it is not this court's duty to fashion such a claim.  "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.; see Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."). It is also not the court's duty to "supply additional factual allegations to round out a plaintiff's complaint."  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

component requiring that the pain or deprivation be sufficiently serious, and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991)).

The plaintiff's proposed allegations in this regard are not significantly different from those found in his first amended complaint.  The plaintiff continues to admit that the defendant Dr. Hylton thoroughly examined him, correctly diagnosed his condition, and properly recommended surgery.  The plaintiff's only dispute with Dr. Hylton's care and treatment is that the physician subsequently refused to perform the surgery because the defendant refused to disclose the reason for the defendant's incarceration.  According to the plaintiff's complaint, Dr. Hylton told prison officials that he needed this information out of concern for his staff's safety and the defendant's possible response to anesthesia.  The plaintiff alleges that Dr. Hylton is prejudiced against inmates and his conduct was discriminatory for that reason.  The plaintiff further complains that Dr. Hylton's refusal delayed the surgery he needed.  Less than six months after the plaintiff's initial examination by Dr. Hylton, a different

physician had successfully operated on the plaintiff.   As for the other defendants, the plaintiff alleges that he filed a grievance against Dr. Hylton with Peggy Schmidt, the compliance officer of North Kansas City Hospital, and that Ms. Schmidt and the other named defendants with administrative authority over the hospital, including the city itself, did nothing to compel Dr. Hylton to perform the surgery on the plaintiff.

Delay in treatment can be actionable under *Estelle, see Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999), but it must, in itself, reflect "deliberate indifference which results in substantial harm," *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quotation and citation omitted).   The plaintiff's disagreement with Dr. Hylton's disclosure condition for non-emergency surgery on an inmate falls well short of an actionable claim of deliberate indifference.   By attaching arbitrary labels of discrimination and prejudice to Dr. Hylton's personal concern for the safety of his staff, the plaintiff comes no closer in stating an actionable claim.   Simply put, the disclosure condition used by Dr. Hylton, by itself, does not rise to the level of an Eighth Amendment violation.   Moreover, the delay in the medical treatment and any harm resulting from it is as attributable to the plaintiff's refusal to disclose as it is to Dr. Hylton's use of the condition.   It likewise

11

follows that the other defendants' actions and inactions with regard to the plaintiff's grievance and the training of hospital state do not state a deliberate indifference claim and further fail to allege the required personal participation[8] in the denial of medical care.  In short, the plaintiff has failed to allege that any prison official or staff person or other state actor knew of and disregarded an excessive risk to his health and/or were deliberately indifferent to a serious medical need and unreasonably interfered with his prescribed treatment.

Accordingly, on the grounds stated herein and for some of the reasons stated in its prior order dated April 23, 2007, the court concludes the complaint should be dismissed as stating no claim for relief. See 28 U.S.C. § 1915A(b)(1) (court is to dismiss complaint or any claim that is frivolous, malicious, or fails to state a claim for relief); See 28 U.S.C. § 1915(e)(2)(B)(ii)("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the

---

[8]*See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)("Individual liability under 42 U.S.C. § 1983 must be based on personal involvement in the alleged constitutional violation."); *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) ("[P]laintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation." (citation omitted)).

court determines that . . . the action . . . fails to state a claim on which relief may be granted.").  In addition, the court denies the plaintiff's motion to amend complaint (Dk. 28) for failure to state a claim for relief.

IT IS THEREFORE ORDERED that the complaint is dismissed as stating no claim for relief and the plaintiff's motion for leave to amend complaint (Dk. 28) is denied;

IT IS FURTHER ORDERED that the pending motions with the following docket numbers:  10, 12, 14, 15, 19, 21, 23, 25, 30, 35, and 36 are denied as moot.

Dated this 25th day of October, 2007, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

13